UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

LLOYD MARTIN, ET AL.                    CIVIL ACTION

VERSUS                                  NO: 10-3595

RONALD WOOD, ET AL.                     SECTION: R(4)


**ORDER AND REASONS**

Before the Court is plaintiffs' motion to remand on the grounds that this Court lacks subject matter jurisdiction. Because the Court finds that defendant Ronald Wood was improperly joined, plaintiffs' motion is DENIED.


**I.   BACKGROUND**

This case arises out of an alleged defect in plaintiffs' title to a property in St. Tammany Parish, Louisiana.  On February 14, 2001, Hickory Glade Inc. conveyed by quitclaim deed any interest it had in a larger parcel that includes the property the Martins now own (the "Martin Property") to defendant William Magee in exchange for ten dollars.  Hickory Glade is a Louisiana corporation created by William Magee.  According to plaintiffs, the record owner of that larger parcel (the "Nill Property") at the time of the February 14, 2001 conveyance was William C. Nill, who bought it on May 6, 1959.  Plaintiffs assert that Hickory

Glade had no ownership interest in the Nill Property at that time.

On April 9, 2002, Magee filed a petition for declaratory judgment in the 22nd Judicial District Court of Louisiana.  In that petition, Magee alleged that he had been in possession of the Nill Property for over one year.  Magee asked the court to recognize his ownership of the property if the absent Nill defendants did not file a petitory action asserting any adverse claim of ownership within thirty days.  The court appointed defendant Salvador Liberto as curator to represent the absent owner, but plaintiffs allege that Liberto did not contact William Nill's heirs.  The state court granted a default judgment to Magee on September 13, 2002.

On April 28, 2005, Magee donated a 26.5 percent interest in the portion of the Nill Property containing the Martin Property to the Great Commission Foundation of Campus Crusade for Christ, Inc.  Magee and the Great Commission sold that parcel to Buddy Coate, L.L.C. (or a related Buddy Coate entity) on May 25, 2005.  On August 16, 2005, Buddy Coate, represented by Magee, filed a petition for declaratory judgment and to quiet title in the 22nd Judicial District Court requesting that the court recognize its right to possess the property.  The state court granted default judgment to Buddy Coate on December 20, 2005.

Buddy Coate built homes on the property and then sold the individual lots.  On October 13, 2005, Buddy Coate sold the Martin Property to Mark and Kristen Graziani with full warranty of title.  Then, on July 31, 2007, the Grazianis sold the property to the Martins with full warranty of title.  On that date, the Martins also obtained title insurance on the property from Fidelity National Title Insurance Company, Inc.

In December of 2008, as the Martins prepared to sell the property to the Sachitanos, they were informed by the closing agent for the Sachitanos that there was a problem with the title. For this reason, plaintiffs were unable to complete the sale, and they still possess the property.

Plaintiffs made a claim against Fidelity under the title insurance policy on February 10, 2009.  Plaintiffs assert that Fidelity received notice of the claim on February 20, 2009 and requested an appraisal of the property.  Plaintiffs allege that they sent Fidelity an appraisal on May 14, 2009 along with other documents and materials, but assert that Fidelity did not pay any part of their claim.  Accordingly, the Martins sued Fidelity, alleging that Fidelity breached the title insurance policy, as well as certain Louisiana statutes (Martin I).  That initial suit was brought in federal court.  On August 18, 2010, the Court found that the amount in controversy in that case did not exceed $75,000 and dismissed the case for lack of subject matter

jurisdiction.  On November 10, 2010, the Court reconsidered its judgment dismissing the case and found jurisdiction.  In the meantime, on August 23, 2010, plaintiffs filed the instant suit in state court.  Defendants removed the case to federal court on October 14, 2010.  Plaintiffs now seek to remand this case on the grounds that the Court lacks subject matter jurisdiction.

## II.  LEGAL STANDARDS

   *A. Removal*

   A defendant generally may remove a state court civil action to federal court if the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).  The removing party bears the burden of showing that federal jurisdiction exists.  *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  In assessing whether removal is appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.  *See e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D.La. 1995).  Although the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, jurisdiction is fixed as of

4

the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

    *B. Choice of Law*

    In a diversity case such as this, the Court applies the choice of law rules of the forum state in determining which state's substantive law to apply.  *See Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005)(citing *Woodfield v. Bowman*, 193 F.3d 354, 359 n.7 (5th Cir. 1999).  Louisiana's general choice of law provision directs that the applicable law on any issue is "the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." LA. CIV. CODE art. 3515.  Specifically regarding contracts, the Code instructs courts to assess the strength of the relevant policies of the involved states in light of the place of negotiation, formation, and performance of the contract as well as the location of the object of the contract. LA. CIV. CODE art. 3537.  Applying these principles, Louisiana courts generally choose "the law of the state where the insurance contract was issued and executed." *See Am. Elec. Power Co. Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009)("Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."); *see also In re Katrina Canal Breaches*, 495 F.3d 191, 206 (5th Cir.

2007)("[In] Louisiana actions involving the interpretation of
insurance policies issued in Louisiana for property located in
Louisiana, Louisiana's substantive law controls.").  In this
case, the insurance policy was issued and executed in Louisiana,
and the Court will apply Louisiana law.


## III. DISCUSSION

### A. *Improper Joinder*

When a nondiverse party is properly joined as a defendant, a
defendant may not remove under 28 U.S.C. § 1332.  Here, the
parties agree that Ronald Wood is a Louisiana citizen.  This
ordinarily would destroy complete diversity between plaintiffs
and defendants.  *See McLaughlin v. Mississippi Power Co.*, 376
F.3d 344, 353 (5th Cir. 2004).  A defendant may remove, however,
by showing that the nondiverse party was improperly joined.
*Smallwood v. Illinois Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir.
2003).  Because this doctrine is a narrow exception to the rule
of complete diversity, the burden of demonstrating improper
joinder is a heavy one.  *Id.*  Improper joinder may be established
by showing: (1) actual fraud in pleading jurisdictional facts; or
(2) the inability of the plaintiff to establish a cause of action
against the nondiverse defendant.[1]  *Ross v. Citifinancial, Inc.*,

---

[1]     The Fifth Circuit now officially refers to "fraudulent
joinder" as "improper joinder."  *See Melder v. Allstate Corp.*,
404 F.3d 328, 329 (5th Cir. 2005).

344 F.3d 458, 461 (5th Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant.  *Id.* at 462-63.  The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant.  *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there must be a reasonable possibility of recovery, not merely a theoretical one.  *Id.*  The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim.  *Id.* (citing *Travis v. Irby*, 326 F.3d 644, 648-49) (5th Cir. 2003)).  In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."  *Travis*, 326 F.3d at 649.  In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party.  *Id.*

7

The success of plaintiffs' motion to remand depends, in part, on whether there is a reasonable possibility that state law will impose liability on Wood.  Plaintiffs' claims against Wood involve his conduct in adjusting their claim against Fidelity. Defendants assert that because Louisiana law does not recognize a cause of action by an insured against an insurance adjustor, plaintiffs cannot recover against Wood, and he is improperly joined.

Under Louisiana law, an insurance adjuster generally owes no legal duties to an insurance claimant.  *See Menendez v. State Farm & Cas. Co.*, 2007 WL 519875, at *2 (E.D. La. Feb. 14, 2007)(finding no cases imposing a duty on independent insurance adjusters to insured to conduct a property investigation or advise insured of coverage issues); *Edwards v. Allstate Prop & Cas. Co.*, 2005 WL 221560, at *3 (E.D. La. Jan. 27, 2005) ("Louisiana courts and federal courts applying Louisiana law have recognized that, as a general rule, no cause of action lies against an insurance adjuster for processing and handling of an insurance claim"); *see also Pellerin v. Cashway Pharmacy of Franklin, Inc.*, 396 So.2d 371, 373 (La. Ct. App. 1981)("As a general rule, there is no relationship existing between a claimant and the insurance adjuster on which a duty to inform of prescription can be based.").  In limited circumstances, federal and state courts have recognized that an adjuster may owe a duty

8

to an insured.  Specifically, the Louisiana appellate decision in
*Pellerin* set forth circumstances that may cause an adjuster to
assume legal duties to an insured.  *Pellerin*, 396 So.2d at 373
(adjuster could possibly assume duty to insured when there is
disparity in education of the parties, adjuster makes promises,
claims or misrepresentations with actual or apparent authority,
or engaged in fraud); *see also Alarcon v. Aetna Cas. & Sur. Co.*,
538 So.2d 696, 699 (La. Ct. App. 1989)(holding that under some
circumstances a tort duty on the part of the adjuster to the
claimant may exist in the settlement of an insurance claim).
Federal courts have also found that an adjuster may owe a duty to
an insured if the *Pellerin* factors are present.  *See Edwards*,
2005 WL 221560, at *3 (citing *Pellerin* for the proposition that
there are some circumstances when an adjuster may have undertaken
a duty to the insured); *Rich v. Bud's Boat Rentals, Inc.,* 1997 WL
785668, at *3 (E.D. La. Dec. 18, 1997)("While as least one
Louisiana appellate decision [*Pellerin*] stated that an adjuster
could possibly assume a duty to disclose the prescriptive period
to an insured in certain circumstances, none of the circumstances
mentioned in that case has been claimed to apply here.").
Further, the Court in *Edwards* specifically recognized that a duty
may exist when an adjuster has engaged in fraud toward the
claimant, or undertakes to give a claimant false information
about the potential success of a claim when the adjuster knows or

should know that the claimant is relying on the information to make decisions about his claim. *See Edwards*, 2005 WL 221560, at *3.

Here, plaintiffs allege that Wood knowingly tried to cover up defects in the title and sought to shield himself and his employer Fidelity from liability by offering to write a title insurance policy for the Sachitanos (the prospective purchasers of the Martin property). The Court in *Pellerin* stated that if an adjuster engages in fraud or makes promises or misrepresentations, it may owe a duty to the insured. Interpreted liberally, plaintiffs' complaint can be read to assert the type of fraud or misrepresentation contemplated in *Pellerin*. The Court finds, however, that there is no reasonable basis to predict that plaintiffs might be able to recover against Wood on this basis. Under Louisiana law, a claim for delictual fraud or intentional misrepresentation of a material fact requires: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury. *Guidry v. United States Tobacco Co. Inc.*, 188 F.3d 619, 627 (5th Cir. 1999). Plaintiffs' complaint does not satisfy any of these requirements. First, plaintiffs have not demonstrated that Wood made a misrepresentation concerning a material fact. Plaintiffs contend that Fidelity's practice of

10

"two-link" title examinations is intended specifically to shield
Fidelity from liability and assert that Wood and Fidelity
"cover[ed] up the defects in title from the Martins and future
owners of the Martin property."[2]  Plaintiffs rely on an email
Wood composed in which he states that Fidelity would issue a
title insurance policy to the Sachitanos to support this claim.
Title insurance is a contract of indemnity.  *Bank of Jeanerette
v. Lawyers Title Ins. Corp.*, 2010 WL 3734056, at *3 (W.D. La Aug.
12, 2010).  Title insurance does not guarantee the legal validity
of title.  Rather, it indemnifies the insured against loss caused
by title defects which are not excluded or excepted from the
policy.  Plaintiffs fail to explain how the decision to issue a
policy to the Sachitanos constitutes a misrepresentation, much
less a misrepresentation intended to deceive plaintiffs or how it
would shield Fidelity from liability.  Plaintiffs also do not
connect this representation to any injury they sustained.  The
alleged statements were not even made to the plaintiffs.  The
possibility that state law may impose liability must be
reasonable, not merely hypothetical.  *Travis*, 326 F.3d at 648.
There are no factual allegations in the petition to support the
assertion that Wood made a fraudulent misrepresentation.  Nor are

---

[2]      R. Doc. 1-4.

there any factual allegations in the complaint that would impose
a duty on the adjuster under *Pellerin*.  Accordingly, the Court
finds that there is no reasonable basis for predicting recovery
against Wood for fraud or misrepresentation.

   To the extent that plaintiffs assert a breach of contract
claim against Wood in his capacity as an officer or employee of
Fidelity, the Court finds that there is no reasonable basis for
predicting recovery against Wood on this claim.  Absent fraud, an
officer or employee of a corporation is not liable for his
employer's breach of contract.  *See B-G & G Investors VI, LLC v.
Thibaut HG Corp.*, 985 So.2d 837, (La. Ct. App. 2008)(holding that
plaintiffs did not state a cause of action for breach of contract
against officers of a corporation because an officer cannot be
liable for the debts or contractual obligations of the
corporation absent an act of fraud); *see also New Orleans Jazz &
Heritage Found., Inc. v. Kirksey*, 40 So. 3d 394, 403 (La. Ct.
App. 2010)(stating that under Louisiana law, "ordinarily a
shareholder, officer, or employee of a corporation is not liable
for the conventional or legal obligations of a corporation.")
(citing LA. REV. STAT. 12:93(B)); *Deroche v. P&L Const. Materials,
Inc.*, 554 So.2d 717, 719 (La. Ct. App. 1989) ("Generally, if
directors and officers of a corporation do not purport to bind
themselves individually they do not incur personal liability for

debts of the corporation except for acts of fraud, malfeasance or criminal wrongdoings"). Plaintiffs' insurance policy is a contract between the Martins and Fidelity. Wood is not a party to the contract. Therefore, in order to hold Wood individually liable, plaintiffs must allege that Wood engaged in fraud. As discussed previously, plaintiffs fail to state a claim against Wood for fraud. Accordingly, there is no reasonable basis for predicting that state law might impose liability on Wood for breach of contract. The Court finds that Wood was improperly joined and does not consider his citizenship for purposes of diversity.

B. *Amount in Controversy*

Under Fifth Circuit law, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages. *Allen*, 63 F.3d at 1335. When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith." *Id. (citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). If a plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal. *Allen*,

63 F.3d at 1335.  "Thus, in the typical diversity case, the plaintiff remains the master of his complaint." *Id.*

Here, however, plaintiffs filed their complaint in Louisiana state court, and Louisiana law ordinarily does not permit plaintiffs to plead a specific amount of money damages. *See* La. Code Civ. Proc. art. 893 ("No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended or incidental demand.").  When, as here, the plaintiffs have alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen*, 63 F.3d at 1335 (quoting *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993).  A defendant satisfies this burden either by showing that it is facially apparent that the plaintiffs' claims exceed the jurisdictional amount or by setting forth the facts in dispute supporting a finding that the jurisdictional amount is satisfied. *Allen*, 63 F.3d at 1335.  The defendant must do more than point to a state law that might allow plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.

14

1995).  Where the "facially apparent" test is not met, it is appropriate for the Court to consider summary-judgment-type evidence relevant to the amount in controversy at the time of removal.  *Allen*, 63 F.3d at 1336.  If the defendant meets its burden of showing the requisite amount in controversy, the plaintiff can defeat removal only by establishing with legal certainty that the claims are for less than $75,000.  *De Aguilar*, 47 F.3d at 1412.

The Court finds that the defendants have met their burden of showing the requisite amount in controversy by a preponderance of the evidence.  Plaintiffs purchased the property for $230,000 and bought a title insurance policy for that amount from Fidelity. Plaintiffs allege that because of a defect in the title, they never acquired title to the property.  Plaintiffs further allege that they submitted a claim to Fidelity under their policy and Fidelity breached its contract by failing to timely adjust their claim.  They claim to have been harmed by Fidelity's conduct and seek damages, penalties and attorney's fees.  Here, plaintiffs' policy entitles them to recover from Fidelity either the value of the insurance policy or the amount required to cure the title defect.  In addition, defendants submit evidence that the plaintiffs have stated that they seek recovery of the full policy limits of $230,000.  Further, it is well-established that

15

statutory penalties and attorney's fees are considered in determining the amount in controversy. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723-24 (5th Cir. 2002)(including a claim for attorney's fees under La. R.S 22:658 in calculating the amount in controversy); *St. Paul Reinsurance Co. Ltd v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)("[I]n addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are *inter alia* penalties, statutory damages, and punitive damages- just not interest or costs."); *Ardoin v. Allstate Ins. Co.*, 2007 WL 97062, at *3 (E.D. La. Jan. 9, 2007) (calculating the penalties recoverable under LA. REV. STAT. §§ 22:1220 and 22:658 in determining whether the amount in controversy exceeded $75,000). Plaintiffs allege that they are entitled to penalties, damages and attorney's fees under Louisiana Revised Statutes §§ 22:1892 and 22:1973,[3] specifically asserting that they suffered general and special damages as a result of Fidelity's breach of contract. The Court finds, therefore, that defendants met their burden of showing the requisite amount in controversy by a preponderance of

---

[3]     LA. REV. STAT. 22:658 has been renumbered as LA. REV. STAT. § 22:1892; LA. REV. STAT. § 22:1220 has been renumbered as LA. REV. STAT. § 22:1973.

16

the evidence.  Further, plaintiffs did not meet their burden of establishing with legal certainty that their claims are for less than the jurisdictional amount.  Accordingly, the Court finds that the jurisdictional amount in controversy requirement is met.

## IV.  CONCLUSION

Because there is complete diversity and the amount in controversy is greater than $75,000, the Court has subject matter jurisdiction over plaintiffs' claims.  Accordingly, plaintiffs' motion to remand is DENIED.  The Court orders this case consolidated with *Martin v. Fidelity,* 09-4195.

New Orleans, Louisiana, this 29th day of September, 2011.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE